IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHRISTIE MAGIN,** <br> **Plaintiff,** <br><br> v. <br><br> **TRINITY HEALTH MID-ATLANTIC** <br> **d/b/a ST. MARYS MEDICAL CENTER,** <br> **Defendant.** | **CIVIL ACTION** <br><br><br><br><br> NO. 21-3303 |

**MEMORANDUM OPINION**

Over the years Plaintiff Christie Magin has worked on and off as a CT Scan Technician for Defendant Trinity Health Mid-Atlantic d/b/a St. Mary's Medical Center. This case concerns her employment from June 2018 to January 2021, when she was terminated by Defendant after taking an unapproved leave of absence for surgery to relieve her carpal tunnel syndrome, as well as Defendant's decision not to rehire her in April 2021. The Complaint asserts two counts of violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*. The first count alleges discrimination, retaliation, and failure to accommodate in connection with Plaintiff's denied request for leave and her termination, while the second alleges discrimination, retaliation, and failure to hire in connection with her April 2021 job application. Defendant filed a Motion for Summary Judgment on all claims. For the reasons that follow, Defendant's Motion will be denied in part and granted in part.

I.  **FACTUAL BACKGROUND**

Defendant hired Plaintiff as a part-time CT Scan Technician in June 2018, to work evenings and the occasional overnight shift.[1] Unfortunately, Plaintiff had some health problems

---

[1] This was in fact Defendant's second time hiring Plaintiff—she had also been employed by Defendant for several years in the early 2000s.

1

and took a several weeks leave of absence for a surgical procedure in 2019. At some point, she also developed carpal tunnel syndrome, which affected her ability to grip, lift, and push, and caused her to sometimes lose feeling in her hands. As a result, in the summer of 2020, she requested, and Defendant approved, a second leave of absence to undergo carpal tunnel release surgery on her right hand. She was absent for six weeks.

Shortly thereafter, Plaintiff requested a third leave of absence for carpal tunnel release surgery on her left hand—a leave she anticipated would last another six weeks. Plaintiff's direct supervisor, Susan Hall, informed Plaintiff that the department "would not be able to accommodate a [leave of absence] at this time." Plaintiff's department then had three open "as needed" technician positions, but Hall did not have approval to fill them because of low "productivity" levels. In addition, Hall's team was covering one full-time technician's long-term leave of absence.

A short time after, Defendant issued a Reasonable Accommodation Denial Form signed by Karlyn Sibel, the Benefits Coordinator and Leave Administrator. This Form stated that if Plaintiff took leave her position would not be held. The reasons given on the form for the denial of her request for leave were for, among other things, "undue hardship" and because she had been "accommodated for two leaves in the last 12 months." Though Plaintiff asked Hall and Sibel to reconsider and provided a doctor's note stating the need for the surgery, Sibel reiterated the denial.

Plaintiff went ahead with the surgery and took an unapproved absence from work starting on November 17, 2020. On December 2, Plaintiff emailed Hall to inform her that her doctor had approved her return to work without any restrictions effective December 31, 2020. Hall did not respond. She did, however, less than two weeks later, hire someone to fill Plaintiff's position.

Unaware that her job was no longer available, as her return date approached, Plaintiff reached out to Sibel and Hall again, reiterating her intention to return to work. They told her that her position had been filled. They also told her that she had not been terminated but that she would be unless she was hired for a new position with Defendant by January 30, 2021. Hall testified that there were no open technician positions in her department at the time and that she did not foresee any being created. In fact, none were posted by January 30, and, so, as of that date, Plaintiff was terminated. She later, in April 2021, applied for a part-time overnight CT Scan Technician position posted by Defendant but was not hired for the job.

Subsequently, Plaintiff filed a charge of discrimination with the Equal Employment Opportunities Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"), and then filed her federal complaint.

## II. LEGAL STANDARDS

To prevail on a summary judgment motion, "the movant must show that 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Nat'l State Bank v. Fed. Reserve Bank of N.Y.*, 979 F.2d 1579, 1581 (3d Cir. 1992) (quoting Fed. R. Civ. P. 56(c)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A factual dispute is material if it "might affect the outcome of the suit under the governing law." *Id.* at 248. "A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007).

The movant bears the initial burden of identifying those portions of the record "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Then, the non-moving party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. "The non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Abington Friends Sch.*, 480 F.3d at 256. "[A] nonmoving party must adduce more than a mere scintilla of evidence in its favor, and cannot simply reassert factually unsupported allegations contained in its pleadings." *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (internal citation omitted).

"[C]ourts are required to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alteration in original) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (*per curiam*)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge" ruling on summary judgment. *Anderson*, 477 U.S. at 255.

Because Plaintiff relies on circumstantial evidence, the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies. *Olson v. Gen. Elec. Astrospace*, 101 F.3d 947, 951 (3d Cir. 1996) (holding that *McDonnell Douglas* framework applies to ADA cases). Under the first step of the *McDonnell Douglas* framework, the employee bears the burden of establishing a *prima facie* case of discrimination. *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013). The plaintiff's burden at the *prima facie* stage "is not onerous." *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 228 (2015) (internal quotation marks omitted) (quoting *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)). "In particular,

making this showing is not as burdensome as succeeding on an ultimate finding of fact as to a discriminatory employment action." *Id.* (internal quotation marks omitted) (quoting *Furnco Constr. Co. v. Waters*, 438 U.S. 567, 576 (1978)).  The plaintiff need only raise a genuine dispute of material fact as to each of the elements of the *prima facie* case.  *Burton*, 707 F.3d at 426.  Once the Plaintiff has established a *prima facie* case, "the burden of production [then] shifts to the defendant to offer a legitimate non-discriminatory [justification] for the adverse employment action."  *Id.* (first alteration added) (quoting *Smith v. City of Allentown*, 589 F.3d 684, 690 (3d Cir. 2009)).  In the third and final step, "the burden of production [shifts] back to the plaintiff to provide evidence from which a factfinder could reasonably infer that the employer's proffered justification is merely a pretext for discrimination."  *Id.*

## III. DISCUSSION

### A. Disability Within the Meaning of the ADA

A threshold question underlying Plaintiff's discrimination and failure to accommodate claims is whether she was disabled within the meaning of the ADA at the time of the alleged adverse employment actions.  *See* 42 U.S.C. § 12102(1); *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 308 (3d Cir. 1999).  Under the ADA, the term "disability" means: "(A) a physical or mental impairment that substantially limits one or more major life activities . . . ; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(1)(A)-(C).  These definitions are known respectively as actual disability, "regarded as" disability, and "record of" disability.  *See Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 143 (3d Cir. 1998); *Eshelman v. Agere Sys., Inc.*, 554 F.3d 426, 433-34 (3d Cir. 2009).

Defendant maintains that Plaintiff is not disabled under any of the three definitions.  Because Plaintiff did not respond to Defendant's arguments that she has shown neither "record

of" disability under 42 U.S.C. § 12102(1)(B) nor "regarded as" disability within the meaning of 42 U.S.C. § 12102(1)(C), to the extent that her claims rely on these definitions, she has abandoned them.  Plaintiff does, however, muster sufficient evidence to counter Defendant's argument that she was not disabled at any relevant period—not at the time of its denial of her request for leave in October 2020, nor upon her termination in January 2021, nor in April 2021 when it declined to rehire her.

The definition of what is an actual disability—"a physical or mental impairment that substantially limits one or more major life activities," 42 U.S.C. § 12102(1)(A)—is interpreted broadly and, thus, "the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis."  *See* ADA Amendments Act of 2008, Pub. L. No. 110–325, § 2(b)(1), (4)-(5), 122 Stat. 3553, 3553 (2008) (codified at 42 U.S.C. § 12101 note). An impairment "need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting."  29 C.F.R. § 1630.2(j)(1)(ii) (2012).

Plaintiff testified that, from 2018 on, her carpal tunnel syndrome sometimes caused her to lose sensation in her hands and limited her ability to grip, lift, and push—limitations that substantially affected her ability to carry out her work because she was often required to lift and maneuver patients.[2]  Indeed, Defendant conceded in its Reply brief that "Plaintiff could not perform her position at 100%."  Defendant relies on the undisputed fact that Plaintiff's physician approved her return to work without restrictions as of December 31, 2020, and on Plaintiff's testimony that, apart from the six-week recovery period after each of her surgeries, she was capable of taking care of herself, capable of working, and was not limited in doing "anything"

---

[2] Lifting and performing manual tasks are major life activities.  29 C.F.R. § 1630.2(i)(1)(i).

for herself.[3] But Plaintiff also testified that, although the surgeries resolved the "majority" of her issues, carpal tunnel continues to limit her ability to grip, push, and lift. By way of example, at her new job (with a different employer), she needs help with any heavy work.

Viewing the record in the light most favorable to Plaintiff, *Scott*, 550 U.S. at 378, she has raised a genuine dispute of material fact about whether she was disabled within the meaning of the ADA at the time of each alleged adverse employment action. Having determined this to be so, her failure to accommodate and discrimination claims will be analyzed in turn under the framework set forth in *McDonnell Douglas*.

### B. Failure to Accommodate

Plaintiff alleges that "Defendant failed to accommodate her reasonable requests relating to her health conditions and request for a brief medical leave of absence." To establish her *prima facie* case for failure to accommodate, Plaintiff must show that "(1) [s]he was disabled and h[er] employer knew it; (2) [s]he requested an accommodation or assistance; (3) h[er] employer did not make a good faith effort to assist; and (4) [s]he could have been reasonably accommodated." *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006).

The only argument that Defendant makes in support of summary judgment on this claim is that Plaintiff has not shown she has a disability within the meaning of the ADA. But, as explained above, Plaintiff, has presented sufficient evidence to raise a question of material fact as to whether she was actually disabled under 42 U.S.C. § 12102(1)(A) when Defendant denied her request for leave. Given that Defendant did not challenge Plaintiff's failure to accommodate

---

[3] Defendant also cites to Plaintiff's testimony that she was able to do all of her "major life activities," and that she did not claim "to be presently disabled" or to have "had a disability" when she worked for Defendant. In the context of a claim under the ADA, "disability" and "major life activities" are legal terms of art. 42 U.S.C. § 12102(1)-(2); 29 C.F.R. § 1630.2(g), (i). While Plaintiff appears to be have been ill-prepared for her deposition in this respect, her testimony is not a concession that, as a matter of law, she was not disabled within the meaning of the ADA.

7

claim on any other grounds this claim survives summary judgment.

### C. Discriminatory Termination

Returning to her discriminatory termination claim: To advance beyond the first step of the *McDonnell Douglas* burden-shifting framework on this claim, Plaintiff must show that: (1) she is "disabled within the meaning of the ADA"; (2) she is "otherwise qualified for the job, with or without reasonable accommodations"; and, (3) she "was subjected to an adverse employment decision as a result of discrimination." *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010); *Fowler*, 19 F.4th at 299 & n.3. Given that she has adduced sufficient evidence to raise an issue of fact regarding her disability and that Defendant does not challenge the other elements of her *prima facie* case, it shoulders the burden of production of offering a legitimate non-discriminatory reason for its adverse employment decisions. *Burton*, 707 F.3d at 426.

Plaintiff does not dispute that the reasons given by Defendant carry its burden. Those reasons are that it denied Plaintiff's leave of absence request for her second carpal tunnel surgery, that it told her she was not eligible for leave under the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.*, and that her job would not be waiting for her on her return if she took unapproved leave, but she took leave anyway and, that, accordingly, her position was filled. Defendant advised her further that, consistent with its Elective and Other Leaves of Absence Policy, if she did not apply for and obtain a new position before January 30, 2021, her employment would be terminated; and, Plaintiff did not do so.

To demonstrate that these reasons are pretextual, Plaintiff must point to "some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Olson*,

8

101 F.3d at 951 (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)). To discredit the employer's explanation, Plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence,' and hence infer that the employer did not act for [the asserted] non-discriminatory reasons.'" *Fuentes*, 32 F.3d at 765 (internal citation omitted) (emphasis in original) (alteration in original).[4]

Plaintiff's first argument pertains to an employer's obligation under the ADA to engage in "the interactive process of finding accommodations" upon receipt of an employee's request for reasonable accommodations. *See Armstrong*, 438 F.3d at 246 (quoting *Taylor*, 184 F.3d at 319). While she has brought a separate claim for failure to accommodate, Plaintiff also contends that Defendant's alleged failure to engage in this mandatory interactive process and "actually determine whether [Plaintiff] could be accommodated" constitutes evidence of discrimination, because it shows that "Defendant had no intention of allowing [Plaintiff] to return to work in any capacity." In support of this position, Plaintiff cites to evidence that Hall denied her request for leave the day after it was made, and that Hall and Sibel never discussed whether to reconsider Plaintiff's request even after she provided a doctor's note.[5] This evidence raises a genuine

---

[4] As a preliminary matter, Defendant exhorts the Court to focus in its pretext analysis only on Plaintiff's termination and to ignore as "immaterial" and "irrelevant," any evidence concerning its reasons for denying Plaintiff's request for leave or for not holding her position open. This exhortation cannot be heeded. An employee's discrimination claim accrues when she is notified that her termination is impending or that her employment has become conditional—not when the official termination finally occurs. See *Fowler*, 19 F.4th at 300 (claim accrued upon notice that employee would be terminated unless she found a new job within the company); *Watson v. Eastman Kodak Co.*, 235 F.3d 851, 855-57 (3d Cir. 2000) (statute of limitations began to run upon notice of impending termination, despite an offer to obtain another position)); *Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980) (discrimination occurred upon notice of decision to deny tenure, not upon subsequent loss of the position). Therefore, Plaintiff's claim accrued when Defendant denied her request for leave and informed her that it would not hold her position, and Defendant's reasons for taking those actions are probative of pretext as to her termination.

[5] This note stated that Plaintiff had "severe bilateral carpal tunnel syndrome" and expressed a "strong recommendation for patients [*sic*] health and safety that she proceed with a left carpal tunnel release." The note warned that "because of the severity of the carpal tunnel delaying surgery could have profound effects on patients

dispute of material fact concerning whether Defendant properly engaged in an interactive process after Plaintiff requested leave, which is probative of whether Defendant's reasons for denying the leave were a pretext for an underlying intention to terminate Plaintiff.

Plaintiff also challenges Defendant's "undue hardship" justification for denying her request. She points to contradictory testimony from Hall and Sibel about whether it was harder for them to cover staff absences in the summertime (when Plaintiff's second request for leave was approved) or in November and December (the period for which her third request was denied). Furthermore, Plaintiff notes, Hall had more staff in 2020 than she does in 2022, and her deposition testimony on the staffing situation in the department at the time of Plaintiff's request for leave contains contradictions—Hall testified that she denied Plaintiff's request for leave due to a staffing shortage and also testified that she had not sought approval to fill three open technician positions in the department due to a lack of "productivity" in 2020. This evidence raises a genuine dispute of material fact about whether Plaintiff's six-week absence in November and December 2020 imposed an undue hardship on Defendant.

Another of Defendant's reasons for denying Plaintiff's request is that she had already taken leave twice in the preceding twelve months. But the record shows that Plaintiff's third leave was only her second within a twelve-month period. Plaintiff maintains that this "obvious error" demonstrates that Defendant's denial of her request for leave was in bad faith. Defendant did not respond to this argument.

Finally, Plaintiff maintains that Defendant's offer to keep her on staff after her return from leave, if she could find another position, was "disingenuous" because Hall "actively worked to replace [Plaintiff] after she provided notice of her expected return to work date," at a

---

[sic] ability to care for herself and perform duties at work using her hands."

time when Hall knew there were no open positions for which Plaintiff could apply.

Taken together, this evidence of inconsistencies and contradictions in Defendant's actions and explanations could cause a factfinder to reasonably disbelieve Defendant's reasons for terminating her. Defendant's Motion will therefore be denied as to Plaintiff's discriminatory termination claim.

### D. Discriminatory Failure to Hire

Plaintiff also alleges that Defendant discriminated against her on the basis of disability by failing to rehire her in April 2021. To establish a *prima facie* case of discriminatory failure to hire, Plaintiff must show that: (1) she belongs to the protected category; (2) she applied for and was qualified for a position for which the covered employer was seeking applicants; (3) despite her qualifications, she was not hired; and, (4) after her rejection, the position remained open, or was filled in a manner giving rise to an inference of discrimination. *Olson*, 101 F.3d at 951. Once again Defendant argues only that Plaintiff was not disabled within the meaning of the ADA at the time of the failure to rehire and does not challenge any of the remaining elements of Plaintiff's *prima facie* case. Accordingly, in that Plaintiff has raised a genuine dispute of material fact about whether she was disabled at that time, she has carried her initial burden.[6]

Defendant contends—and Plaintiff does not disagree—that its reasons for not re-hiring Plaintiff for the overnight position were legitimate in that Plaintiff shied away from night shift work (she had been reluctant to apply for overnight positions and had, at one point, decided against participating in an overnight shift pilot program) and that she had a "long history" of

---

[6] Defendant also raises in passing, absent analysis and without citation to any authority, that Plaintiff has not established her *prima facie* case because she has not shown that Defendant filled the April 2021 technician position in a manner giving rise to an inference of discrimination. Absent argumentation and authority, the argument is waived. *See John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997); *Reynolds v. Wagner*, 128 F.3d 166, 178 (3d Cir. 1997).

"being late and calling out."[7]

But, Plaintiff argues those reasons are pretextual in that, regardless of what she may or may not have thought about overnight shifts, she did apply for the overnight job, she had previously worked the night shift, she was qualified for the position, and had more seniority than the successful candidate.[8] Further, Hall, who she told of her interest in the position, did not respond to her. Plaintiff also raises again her challenge to Hall's credibility given inconsistencies in Hall's testimony about being short-staffed in October 2020 when in fact she hadn't attempted to fill three other positions in the department.

Taken together, these facts are sufficient to lead a factfinder to reasonably disbelieve Defendant's proffered reasons for not rehiring Plaintiff. Defendant's Motion will be denied as to Plaintiff's discriminatory failure to hire claim.

### E. Retaliatory Termination

Defendant moves for summary judgment on Plaintiff's retaliatory termination claim solely on the basis that Plaintiff has not shown the required causal connection, because her protected activity (the October 2020 request for leave) and the adverse action (the termination on January 30, 2021) are not sufficiently close in time. *See Williams*, 380 F.3d at 759 (citations omitted) (holding that, to establish a *prima facie* case of ADA retaliation, a plaintiff must show: (1) that she engaged in protected employment activity; (2) adverse action by Defendant either after or contemporaneous with the protected activity; and, (3) a causal connection between the

---

[7] The record shows that Plaintiff received a Corrective Absence Notice for attendance and/or lateness in May 2019 and another in November 2019. The notices show that Plaintiff "called out," that is, canceled her shift last minute, five times in 2019. Plaintiff also conceded that her supervisor spoke with her about the importance of arriving to work on time.

[8] There is a genuine dispute of material fact about whether the outside candidate hired for the job was less experienced than Plaintiff.

protected activity and the adverse action).

A finding of causation may rest on circumstantial evidence of: (1) the temporal proximity between the protected activity and adverse action; (2) a pattern of antagonism after the protected act; (3) inconsistent reasons for the alleged adverse action; or, (4) any other evidence "gleaned from the record as a whole from which causation can be inferred." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000). Temporal proximity alone may establish a causal link if it is "unusually suggestive of retaliatory motive." *Williams*, 380 F.3d at 760 (quoting *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 189 n.9 (3d Cir. 2003)).

Plaintiff contends that the timing of her termination is "highly suggestive of retaliation and alone creates a material question of genuine fact." But she does not rely on the three-month gap between her request for leave in October and her termination in January. Rather, she maintains that her employment "ended actually much earlier" than January 30, 2021 because Hall's "plan to terminate" Plaintiff began on October 30, when she "denied her reasonable accommodation request without engaging in the interactive process."

Temporality is a fact-intensive inquiry, not one governed by a bright line rule. *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007). Here, in light of the Third Circuit's instruction that an employee's discrimination accrues when she is notified of an impending termination or when her employment becomes conditional, *Fowler*, 19 F.4th at 300, Hall's October 30 email to Plaintiff, stating that the department would not be able to accommodate her request, constitutes the first step in Plaintiff's termination. This action, taken one day after Plaintiff's request for an accommodation, qualifies as "unusually suggestive." *See Jalil v. Avdel Corp.*, 873 F.2d 701, 708-09 (3d Cir. 1989) (two days between notice of EEOC claim and termination was unusually suggestive). Defendant subsequent actions reinforced this

13

connection. For example, approximately ten days later, Sibel informed Plaintiff that her position would not be held. These facts raise a genuine dispute of material fact as to causation. Therefore, Plaintiff has made out her *prima facie* case.

Plaintiff does not dispute that Defendant carried its burden to advance legitimate, non-retaliatory reasons for its adverse employment action. *Burton*, 707 F.3d at 426. Those reasons are the same as those on which Defendant relied in its argument regarding Plaintiff's discriminatory termination claim. Accordingly, the burden shifts to Plaintiff to "provide evidence from which a factfinder could reasonably infer that the employer's proffered justification is merely a pretext for discrimination." *Id*.

Plaintiff cites to the same evidence that she used to support a finding of pretext on the discriminatory termination claim. This evidence—Defendant's failure to interactively engage with Plaintiff after her request for leave, the inconsistencies in the witnesses' testimony about purported staffing constraints, the apparent error in their assertion that Plaintiff had made three requests for leave in twelve months, and Hall's knowledge that there were no open positions to which Plaintiff could have applied—combined with the evidence of temporal proximity advanced in her *prima facie* case,[9] could cause a factfinder to reasonably disbelieve Defendant's proffered non-retaliatory reasons for terminating Plaintiff. Accordingly, Defendant's Motion will be denied as to Plaintiff's retaliatory termination claim.

### F. Retaliatory Failure to Hire

Plaintiff's final claim is that Hall's decision not to rehire her was in retaliation for the EEOC complaint she filed in January 2021. Defendant challenges Plaintiff's *prima facie* case on

---

[9] Plaintiff may rely on the same evidence at both the *prima facie* and pretext stages of the *McDonnell Douglas* framework. *Fuentes*, 32 F.3d at 764.

the basis that Plaintiff cannot show a causal link between these events in that she has alleged neither sufficient temporal proximity nor any other supporting evidence of causation.

Plaintiff voices no full-throated response to this challenge, stating only that "[i]t is clear that collectively, with this narrow timing and Defendant's clear inconsistencies in deciding not to hire [Plaintiff], that she sufficiently establishes she was retaliated against under the ADA when not hired." This conclusory, undeveloped argument is insufficiently robust to shield Plaintiff's retaliatory failure to hire claim from summary judgment. *See John Wyeth & Bro. Ltd.*, 119 F.3d at 1076 n.6 ("[A]rguments raised in passing . . . but not squarely argued, are considered waived."). Defendant's Motion will be granted as to Plaintiff's claim of retaliatory failure to hire.

An appropriate order follows.

**BY THE COURT:**

**/S/WENDY BEETLESTONE, J.**
_____
**WENDY BEETLESTONE, J.**